**SALSBURG'S MEATS, INC. and others similarly situated**

**v.**

**George P. SHULTZ, Individually and as Chairman of the Cost of Living Council.**

**Civ. A. No. 73–1806.**

United States District Court, E. D. Pennsylvania.

Aug. 30, 1973.

nomic Stabilization Act ("Act"), 12 U. S.C. § 1904, namely Stage "A" of Executive Order No. 11730, are repugnant to the due process clause of the Fifth Amendment and the equal protection clause of the Fourteenth Amendment of the United States Constitution.

Jurisdiction is invoked pursuant to Section 211 of the Act. This section confers upon the District Courts of the United States exclusive jurisdiction of cases or controversies emanating from the Act or regulations or orders promulgated thereunder.

The Court is aware of and convinced of the financial distress that has been experienced by the plaintiff and the distress that the plaintiff expects to encounter hereafter if the present program continues in effect. A price ceiling imposed on the retail sale of beef, which is the business of the plaintiff, while the price exacted by farmers and wholesalers remains unrestrained and unregulated, unquestionably creates a financial predicament that is not easily resolved. However, this Court is without authority to grant the relief sought by the plaintiff and, for the reasons hereafter stated, the motion for preliminary injunction must be denied.

Actually, plaintiff seeks two distinct forms of relief. As discussed above, the first form of relief requested is a preliminary injunction restraining the Cost of Living Council ("Council") from enforcing the price ceiling imposed on the retail sale of beef, which restraint is prayed for against the defendant on behalf of the plaintiff and others similarly situated.

In addition, plaintiff petitions the Court to certify the constitutional issues presented in this litigation to the Temporary Emergency Court of Appeals for resolution in accordance with Sections 211(c) and 211(g) of the Act. Section 211(c) of the Act provides, in relevant part, that this Court must certify any

---

Labron K. Shuman, Philadelphia, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., Gregory T. Magarity, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Plaintiff, Salsburg's Meats of Shillington, Pennsylvania, processor and retailer of meat products, moves this Court to issue an order preliminarily restraining the Cost of Living Council, through its director, John T. Dunlop,[1] from enforcing the price ceiling imposed on the retail sale of beef. Plaintiff contends that certain provisions of the Eco-

---

1. Suit was initially brought against George P. Shultz as Chairman of the Cost of Living Council. Upon stipulation of the parties, John T. Dunlop, the present Director of the Cost of Living Council, was substituted as a named defendant.

constitutional issues which are determined to be substantial in nature to that specifically convened Emergency Court of Appeals. Since the allegations raised by the plaintiffs do not present substantial constitutional issues, none will be certified to the higher tribunal.

### Motion for Preliminary Injunction

■ It is well settled that the granting of preliminary injunctive relief is dependent upon the satisfaction by the moving party of the following three requirements: (1) that irreparable harm will result to plaintiff from the denial of injunctive relief; (2) a demonstration of a substantial likelihood of success on the merits; and, (3) a showing that the public interest will not be impaired by the granting of such relief. Berrigan v. Norton, 451 F.2d 790 (2d Cir. 1971); Hamlin Testing Labs, Inc. v. A.E.C., 337 F.2d 221 (6th Cir. 1964); Midland-Ross Corporation v. Sunbeam Equipment Corporation, 316 F.Supp. 171 (W.D.Pa.1970).

■ Plaintiff has failed to show that it will suffer irreparable harm, as defined by the law, from the denial of injunctive relief. Viewing the evidence in the light most favorable to the plaintiff, the harm suffered can only be characterized as economic. Specifically, the harm alleged by the plaintiff consists in the reduction of business activity and the consequent loss of profits from reduced sales of meat. In view of the nature of the harm suffered by the plaintiff, the well-established legal principle that monetary loss alone does not constitute that kind of injury essential to the granting of a preliminary injunction necessitates the denial of plaintiff's motion. See, Tele Controls, Inc. v. Ford Industries, Inc., 388 F.2d 48 (7th Cir. 1967); Virginia Petroleum Jobbers Ass'n v. Federal Power Commission, 104 U.S.App.D.C. 106, 259 F.2d 921 (D.C. Cir.1958); Radio Hanover, Inc. v. United Utilities, 273 F.Supp. 709 (M.D.Pa. 1957).

Let it not be understood that the Court deems the claims of the plaintiff frivolous or its plight insignificant. What has been decided is that there is no irreparable harm from the viewpoint of the equity jurisdiction of this Court to issue an injunction. In this particular case, the financial loss has been suffered over a relatively short period of time—approximately two or three months—and the Court is of the opinion that this does not constitute irreparable injury as a matter of law. The injury complained of is not sufficient to justify or warrant this Court in overturning the system of controls that have been promulgated by a special agency (Council) duly created and functioning pursuant to a lawful legislative enactment (Act) of the United States Congress.

In regard to the second requirement that the moving party must demonstrate a substantial likelihood of success on the merits, the issue presented is whether or not there is a substantial likelihood that the plaintiff's allegations of constitutional infirmities would be upheld by the Temporary Emergency Court of Appeals if those issues were referred to that court. In other words, is there a substantial likelihood that the Court of Appeals will decide that certain provisions of the Act are violative of the Constitution?

The Supreme Court, in Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L. Ed.2d 231 (1971), held that Federal regulatory statutes are consistent with the due process clause if they are "rationally based and free from invidious discrimination." In affirming the constitutionality of Section 224 of the Social Security Act, 42 U.S.C. § 424a the Court in *Richardson* relied on the rational basis test first enunciated in Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), which states:

> "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution sim-

ply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality' . . . 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' "

 In view of the tests outlined in *Richardson* and *Dandridge*, the role of this Court is limited to an evaluation of whether a rational basis existed for promulgating the regulations now being challenged. A fair and reasonable appraisal of the factual and opinion evidence submitted by the defendant, principally from the testimony of John T. Dunlop, Director of the Council, as embodied in his affidavit, demonstrates that there existed a rational and reasonable basis for the imposition of the ceiling on the retail sale of beef. In support of the price regulations, the affidavit contained the following assertions:

" . . . One of the primary goals sought to be achieved by Phase IV was to manage the inflationary bulge by allowing different segments of the economy to come off the freeze in different stages. The staged approach serves to delay pass through of some cost increases which had been built up prior to and during the freeze and to reduce the sudden surge of consumer prices in any one period of time.

" . . . Evidence available in the succeeding months showed a continuation of accelerating increases in the prices of red meats, disproportionate to price increases experienced in other sectors of the economy. In an effort to halt these increases, the President, on March 29, 1973, imposed a ceiling on the prices of red meats (beef, veal, pork and lamb) . . . In order to maintain current levels of production, stimulate increased production, and to avoid the huge price impact that would result if all ceilings were removed simultaneously, on July 18, the President removed the ceiling on pork and lamb and announced that the ceilings on beef would terminate on September 12."

The above-described economic conditions present a state of facts which reasonably justify the promulgation and enforcement of the provisions of the Act now in question.

 Plaintiff also contends that the regulations established by the Council pursuant to the Act setting ceiling prices on the sale and purchase of beef are arbitrary, capricious, and illegal in violation of the Fifth and Fourteenth Amendments. There is nothing in the law which requires that economic stabilization regulations must affect every member of society equally. All that is required to avoid arbitrary and capricious regulations is that those in each classification be treated alike. Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). There is no evidence in the record that plaintiff was subjected to discrimination of an invidious and arbitrary nature; nor is there evidence that unequal treatment has been obtained within the classification of which the plaintiff is a member. In view of the well-accepted, long-range justification of the price ceiling on beef, the requisite rationality is present.

Furthermore, inasmuch as discrimination of an arbitrary or invidious nature is absent, this Court does not feel that it can or that the Temporary Emergency Court of Appeals would substitute its judgment or rationality for that of a duly convened, statutorily created Government agency, which in the instant case is the Cost of Living Council.

The plaintiff has also failed to establish that the public interest will not be substantially impaired by the granting of the injunction. The purpose of the price ceiling, among others, is an attempt by the Government, through the Council, to combat long-run inflationary trends, to secure the value of the dollar, and to provide a reasonably smooth transition into the next phase of the economic program. The public interest in this context means all consumers, sellers, and buyers of consumer goods. The total economic picture must be considered.

As John T. Dunlop's affidavit most appropriately pointed out, "it is essential that our decisions are made with a view to all consequences upon the total economy, rather than only upon one sector."

This Court feels that the public interest will not be furthered through judicial intervention in an area that is fraught with intricate complexities of economics—supply and demand, inflationary and deflationary trends, market responses and predictions—these matters have been properly and duly delegated to the Council by the Congress of the United States under the Act.

■ This Court must assume that the Council sincerely believes, even during this period of economic hardship, that its long-range objectives will come to fruition through the enforcement of the price restrictions. Great weight must be placed on the judgment and expertise of the agency involved. University of Southern California v. Cost of Living Council, 472 F.2d 1065 (T.E.C.A.1972). On the grounds that the granting of the requested relief could interfere with the best interests of the public, plaintiff's motion for a preliminary injunction will be denied.

*Request for Certification to the Temporary Emergency Court of Appeals*

■ In order to provide uniformity and consistency of decisions concerning the Act, Congress has established the Temporary Emergency Court of Appeals ("TECA"), into which all decisions of the District Courts involving interpretation of the Act and regulations promulgated thereunder must be channeled. Section 211(c) of the Act provides that the District Court must certify all constitutional issues determined to be substantial in nature to the TECA for resolution. Essentially, Sections 211(c) and 211(g) operate to divest this Court of authority to decide a substantial constitutional question arising from the provisions of the Act and dictate immediate referral to the TECA of any such issue.

■ This Court's sole function, then, is to determine the singular narrow question as to whether or not the constitutional issues raised by the plaintiff are substantial. The District Court, in Delaware Valley Apt. House Owners Ass'n v. United States, 350 F.Supp. 1144 (E.D.Pa.1972), declared that a constitutional issue is not substantial if it has previously been decided by the Supreme Court or is obviously without merit.

As stated earlier in the opinion, plaintiff's claim is not devoid of merit, nor wholly insubstantial. However, the basic legal principles relative to plaintiff's due process and equal protection arguments have been litigated to a great extent and have been resolved by the Supreme Court.

■ The authority of the Federal Government to control wages and prices in the public interest is now well established. Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944); Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944). Indeed, in American Power and Light Co. v. S. E.C., 141 F.2d 606, 623 (1st Cir. 1944), aff'd 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103 (1946), the Court stated:

"... not every curtailment or impairment of existing rights, nor every incidental business loss resulting from regulatory legislation is a 'taking' in the constitutional sense."

Although not Supreme Court decisions, this Court must take note of the fact that the constitutionality of the Economic Stabilization Act of 1970, as amended, and the Executive Orders and regulations issued thereunder have been repeatedly upheld. Amalgamated Meat Cutters & Butcher Work. v. Connally, 337 F.Supp. 737 (D.D.C.1971); U.S. v. Lieb, 462 F.2d 1161 (T.E.C.A.1972); University of Southern California v. Cost of Living Council, *supra*.

Furthermore, the Supreme Court has repeatedly held that a statutory or regulatory classification will not be set aside as in violation of due process or equal protection if "any state of facts reasonably may be conceived to justify it." Dandridge v. Williams, *supra*; Mc-

Gowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

Having concluded that a reasonable basis exists for the Act and regulations promulgated thereunder, the function of this Court is exhausted.

 Accordingly, the Court finds that the plaintiff's constitutional challenge is not substantial and will not certify the matter to the Temporary Emergency Court of Appeals.